CROWE v. OSCAR BARNETT FOUNDRY CO.

(Circuit Court of Appeals, Third Circuit.  March 26, 1914.)

No. 1839.

PATENTS (§ 328*)—INFRINGEMENT—GRATE-BAR.
    The Crowe patent, No. 668,495, for a grate-bar, construed, and *held* not infringed.

Appeal from the District Court of the United States for the District of New Jersey; Joseph Cross, Judge.

Suit in equity by Paul L. Crowe against the Oscar Barnett Foundry Company.  Decree for defendant, and complainant appeals.  Affirmed.

For opinion below, see 206 Fed. 164.

W. P. Preble, of New York City, for appellant.
Russell M. Everett, of Newark, N. J., for appellee.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

BUFFINGTON, Circuit Judge.  Paul L. Crowe, the plaintiff, on February 19, 1901, obtained patent No. 668,495 for a grate and bar therefor.  He filed this bill against the Oscar Barnett Foundry Company, charging infringement thereof.  On final hearing the court below, in an opinion reported at 206 Fed. 164, held defendant did not infringe.  Thereupon the plaintiff took this appeal.

The claims in question are as follows:

    "1. A grate-bar comprising a body portion having a strengthening-web beneath it, a fire-bearing surface comprising a series of teeth formed by vertical corrugations upon the opposite sides of the bars, and depending single hooks near both ends of the grate-bar, said hooks having chain-engaging portions extending longitudinally of the bar, and adapted to engage the links of ordinary chains for forming a traveling grate.

    "2. A grate-bar for traveling grates comprising a body portion, laterally-extending fingers forming a fire-bearing surface, a depending projection near each end of the bar upon the under side thereof terminating respectively in

a laterally-projecting finger forming chain-engaging hooks, the hooks at both ends extending in one direction, substantially as described."

It will be noted that these claims are for a single article, viz., a grate-bar. For while, as stated in the claims, the contour of the bar is such as to adapt it "to engage the links of ordinary chains," yet a chain is not a part or element of the claim. Indeed, the claim is not a combination of separate elements, but is for a single article combining in itself several individual features. Turning, then, to the specification and claims, we find that among those individual features the grate-bar has "depending single hooks near both ends of the grate-bar." Further:

"The body-portions of the grate-bars are provided at their ends with depending portions *5 5*, provided with laterally-extending pins *6 6*. These depending portions *5* and the pins *6* form hooks near each end of the bars for engaging the chains used in connecting up the traveling grate. * * * The alternate grate-bars are arranged with their attaching-hooks extending in opposite directions. * * * When these hooks are inserted in the links of the chain *10*, as seen in Fig. 3, they will enter the same from the opposite sides of the chain, and the grates will thereby lock each other against accidental displacement because of their intermeshing fingers. * * * One or more of said bars can also easily and quickly be detached from said chain or chains without detaching other bars from said chain and can be as quickly replaced by a new bar or bars."

From these extracts and the illustrations of the patent it will be seen that the important functional feature consisted of hooks, or as Crowe calls them "attaching hooks." These hooks, which were either "integral with the grate-bars" or "made separate therefrom and secured thereto in any suitable manner," were of particular form, location, and number. In the first place they were a part of the bar itself, either integrally or by securing, and as a part of the bar they hooked into the links. In other words, the hooks as a part of the bar were—as described in the claim—"adapted to engage the links of an ordinary chain." This engaging was possible because a hook form was used, and because, as described in the claim, the hooks had their "chain-engaging portions extending longitudinally of the bar." And, lastly, because such hooks were duplicated and located "near both ends of the grate-bar." As we noted, a chain is no part of the claim; but the patent shows that Crowe's bars were, when attached to the chain, so alternately placed in reversed order that the two hooks on one bar pointed in the opposite direction from the two hooks on the adjoining bar. Moreover, since, as quoted above, these oppositely pointed hooks on adjacent bars "are inserted in the links of the chain * * * and enter the same from opposite sides of the chain," it will be apparent that the links of the chain must stand in an X or inclined relation relatively to each other, and not in successive vertical and horizontal relation.

The patent proceedings show that all of these features were moving characteristics in securing to Crowe the issue of his patent. The number of his hooks, the location of one at each end, their being longitudinal of the bar and all pointing in one direction, these were all factors of number, form, and location which contributed to that facility and ease of removal of one bar and supply of another which secured

CROWE V. OSCAR BARNETT FOUNDRY CO. **635**

the patent grant. It follows, therefore, that to now ignore these features, to put aside the foundation on which the patent was granted and must now stand, and seek to widen the patent to include methods of attachment wholly different in numbers, in form, and in manner of engagement, is to now use the latter term of the patent for a purpose that would have been fatal to its grant. Viewing the patent in this light, it follows the defendant does not infringe. Beyond the use of a hook at one end, which was common in the prior art, and from which Crowe differentiated himself by the use of two, the defendant's grate-bar is wholly different. As we said, he places a hook at one end, as does Crowe; but what he uses at the other is not a hook in the sense of Crowe's claim, as "adapted to engage the links of ordinary chains for forming a traveling grate." In other words, if the bolt which Crowe alleges is his hook were made, as the patent says, "integral with the grate-bars," or "made separate therefrom and secured thereto," we would not have the element of Crowe's claim, namely, a hook "adapted to engage the links," etc. The grate-bar thus formed—and as we must bear in mind Crowe's claim is for a grate-bar—has no hook and it will not hook into or engage the link. Mechanically the defendant does a wholly different thing. He does not and cannot have the chain in the X or inclined relation which Crowe must have. On the contrary, he first brings his successive horizontal links into a relation with the hookless end of his grate-bar, and when the two are thus in position he clamps them together by a bolt. This third member or T-bolt is equally independent of both grate-bar and link. If it be called a hook, and be described as a hook depending from a grate-bar, it can be equally well described as a hook depending from a log chain link and adapted to engage a grate-bar. In point of fact it is neither a hook nor a dependent hook, but is a bolt and an independent bolt, which serves by its T-head at one end and its cotter pin at the other to clamp the grate-bar and the link together. In that respect the court below, referring to Tibbitts' patent, No. 561,627, well summed up the mechanical features of the defendant's fastening in these words:

"Tibbitts' bar is fastened to the chain at one end by a hook; the bar is then drawn over and bolted to the chain at its other end. Defendant's device is operated quite similarly; its bar is hooked at one end in a vertical link in the chain and fastened thereto by passing upward through a horizontal link, a T-headed bolt into a socket in the bar, after which a cotter pin is passed through said socket and the end of the bolt therein. It manifestly is *not fastened to the bar by hooks*, such as are called for by the claims of the patent in suit."

The decree below is therefore affirmed.